NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231015-U

NOS. 4-23-1015, 4-23-1016 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DERRIAN GAMILL, | ) | Nos. 22CF765 |
| Defendant-Appellant. | ) | 22CF766 |
| | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant failed to establish the trial court abused its discretion in revoking his pretrial release.

¶ 2    Defendant, Derrian Gamill, appeals the trial court's order revoking his pretrial release under article 110 of the of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), which was recently amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). Pub Act 101-652, § 10-255 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (resetting the effective date of the Act to September 18, 2023). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    This appeal involves two cases in which bond was set for defendant that were

consolidated for appeal. In Winnebago County case No. 22-CF-765, on April 5, 2022, the State charged defendant with a March 2022 residential burglary (720 ILCS 5/19-3 (West 2022)), a Class 1 felony (appellate case No. 4-23-1015). The State alleged defendant entered the residence of Deja D. Jamerson without authority and with the intent to commit a felony or theft. In Winnebago County case No. 22-CF-766, on the same day, the State charged defendant with the February 2022 residential burglary (*id.*) and burglary (*id.* § 19-1(a)) of the residence of Wendy Arreguin (appellate case No. 4-23-1016).

¶ 5        Bond was set at $25,000 (10% to apply). It applied concurrently to both Winnebago County cases.

¶ 6        In their appellate memoranda, the parties agree defendant was on mandatory supervised release when he was charged in the two cases. According to the memoranda, the Illinois Department of Corrections (DOC) sought custody of defendant. An August 23, 2022, order shows defendant was remanded to the custody of the sheriff in case Nos. 22-CF-765 and 22-CF-766. Checked boxes indicate defendant's bond was modified to $25,000. The box next to "(10%)" is not checked. The box next to "Recognizance" is checked. Under that box is written "DOC Hold." Among the conditions of defendant's "Recognizance" was he was to appear at all court dates, give written notice to the clerk within 24 hours of a change of address, and report to parole services.

¶ 7        The parties further agree DOC did not return defendant to Winnebago County custody; he was released. It is unclear from the record when DOC released defendant. An order from August 31, 2022, indicates defendant was released from DOC shortly after August 23, 2022. That order states the following: "On motion of State and Defense Counsel, it is ordered that Defendant's recognizance bond is revoked and a warrant shall issue. Bond will be set when

Defendant returns to the custody of Winnebago." The docket sheet indicates a bench warrant was issued on August 31, 2022, for defendant's failure to appear.

¶ 8        On April 2, 2023, defendant, under a bench warrant, was taken into the custody of Winnebago County. Bond was set in another Winnebago County case against defendant (Winnebago County case No. 22-CF-2728) for $100,000 (10%). The order indicates no bond was ordered in the two cases on appeal here.

¶ 9        On July 21, 2023, "concurrent" bond was set in the two cases at $10,000, 10% to apply.

¶ 10        Six days later, defendant posted bail and was released from custody. Bail was posted by defendant's sister. The next court date was set for August 17, 2023. After defendant failed to appear at that court date, the trial court issued a bench warrant.

¶ 11        The record reveals defendant was taken into custody on the bench warrant on October 10, 2023, and the following day the State petitioned to revoke defendant's pretrial release in both cases. According to the State's petition, defendant, while on pretrial release, on January 1, 2023, committed the offense of "Aggravated Battery/Firearm and Unlawful Use of a Weapon/Felon" when defendant knowingly discharged a firearm, striking a minor and causing him injury (Winnebago County case No. 23-CF-1952). This January offense was first charged in September 2023. The State alleged no condition or combination of conditions of release would reasonably ensure defendant's appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 12        On October 16, 2023, the trial court held a hearing on the State's petition to revoke. At the start of the hearing, the court took judicial notice of the factual summaries in case Nos. 22-CF-765 and 22-CF-766. According to the probable cause statement in case No.

- 3 -

22-CF-765, Jamerson left her residence on March 21, 2022, and returned the following day. When Jamerson returned, she found her front door open and saw someone had entered a bedroom window. A wall-mounted air-conditioning unit, some furniture, and two televisions were missing. The burglar removed condiments from the refrigerator and squirted them around the apartment. A detective found most of the stolen property in a vacated apartment on the same floor as Jamerson's. Fingerprints were recovered from a mustard bottle on the floor of Jamerson's apartment. The fingerprint evidence returned to defendant. In case No. 22-CF-766, the probable cause statement asserts Arreguin left her residence on February 14, 2022, and returned two days later. When she returned, she found a window lifted open and a television missing. A detective found a fingerprint on the dining room table directly next to the window point of entry. The detective tested the fingerprint, which returned to defendant.

¶ 13　　　　The State made a further proffer regarding Winnebago County case No. 23-CF-1952:

> "[T]he crux of this case, Judge, is that, on January 1 of 2023, at around 2:30 p.m., officers received reports of a shooting victim at 220 Cameron Avenue. Eventually Officer Sims (phonetic) spoke with a minor child ***. He indicated that he was inside of his apartment prior to the shooting and his mom asked him to get something out of her vehicle. [The minor] advised that he walked downstairs toward the parking lot and walked by three black males who were standing in the entrance of 220 Cameron Avenue, in the breezeway, on the south side. He said that he knew these two subjects from being out of Concord, but did not know their actual

- 4 -

names.

He said he walked by and observed that two of the subjects had unknown type handguns in their front waistband. [The minor] said that he knew one of the guys by a street or social media name, Shorty Foe *** and described him as a black male, shorter length dreads, around 6' 1, medium skinny build, wearing a blue-red Nike jogging suit with white shoes that had green and black designs.

He said the second suspect he knew went by the street name, or social media name [Veeno King Go]; and he described him to be a short black male, thin build, dirty looking.

[The minor] advised that he believes that Shorty Foe resided in the building outside of the south gate, which would be 325 Cameron Avenue. He told—he further explained that, as he walked by the males, Shorty Foe said to him, quote, 'What's the word, gang?', unquote. [The minor] said he replied saying something to the effect of 'nothing much'. [The minor] said he saw the handguns in their waistbands and just continued to walk past them. Shortly after, [the minor] said that he began hearing gunshots and felt that he was shot in the left leg. He was later interviewed and shown a photo lineup containing this defendant.

And this is all I know, Judge, is that he was shown the photo lineup and he picked [defendant] out of the lineup."

¶ 14   Defendant called one witness, his mother, Lynda Gamill. Lynda testified

defendant could live with her. According to Lynda, defendant had two uncles who recently died. This affected the family in "regards to keeping track of where [defendant] was supposed to be." Defendant suffered from attention-deficit/hyperactivity disorder and depression. Lynda agreed to help defendant keep his schedule in order and get him to court. Lynda testified defendant needed to go to back to Rosecrance to get counseling.

¶ 15    On cross-examination, Lynda agreed defendant had not received mental health treatment for about one year. When asked if there was anything preventing him from getting treatment, Lynda stated he would become a little bit agitated sometimes as he lost a sister a year ago "to some stuff they call SPICE." Defendant was still recovering from her death.

¶ 16    The trial court asked Lynda some questions about when defendant was released from DOC. Lynda testified she could not "quite remember." Lynda knew he was home for Christmas 2022 but was uncertain if he was home for Thanksgiving.

¶ 17    Defense counsel clarified defendant was in DOC on August 31, 2022, but he was released "soon thereafter." Defense counsel further proffered defendant stated he missed the August 17, 2023, court date because he had the dates confused. Defendant informed her he went to court the following day and looked for the courtroom and was unable to find where he was supposed to be. Defendant left after not finding his name on any of the screens. Defendant, in addition to the diagnoses his mother testified to, suffered from schizophrenia.

¶ 18    The trial court found defendant was ordered to return to Winnebago County upon his release from DOC, which he did not do. The court observed defendant was "gone for months, and months, and months." The court further found it "resolved cases" and defendant had been placed on probation but had not reported to probation, which would have helped with some of his mental health issues. The court noted defendant failed to appear on August 17, 2023, and did

not at any time after appear to defense counsel or the court to address that absence. The court observed defendant was sent a notice regarding the forfeiture of his bond but failed to appear at a hearing on September 22, 2023. The court, concerned defendant did not follow through on the things he was supposed to do, stated, "I am not convinced that, if you're out of custody, that you're going to comply with the conditions of your release or that you're going to appear in court when required." The court determined, "[T]he State has shown by clear and convincing evidence there are no conditions or combination of conditions that would reasonably ensure the appearance of the defendant for later hearings or prevent him from being charged with other offenses." The court also found defendant was on pretrial release for a felony and he had been charged with a felony while on pretrial release.

¶ 19        This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21        Defendant filed a notice of appeal and a supporting memorandum. Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Sept. 18, 2023)), by which he asks this court to reinstate the bond posted in July 2023. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." Defendant checked four grounds for relief and wrote on the preprinted lines sentences to support each claim. For one of the grounds, defendant provided argument in a memorandum.

¶ 22        The first ground for relief checked by defendant in his notice of appeal states, in relevant part, "[d]efendant was not charged with an offense qualifying for denial or revocation of pretrial release ***." On the lines below the preprinted text, defendant wrote the following:

              "The Defendant is accused of committing a new offense on

1/1/23. At the time, the Defendant was not on pretrial release because prior bond was revoked; and even if the Defendant was on pretrial release at the time, the Defendant has since been arrested on the warrant and has subsequently been released on bail; that the new matter was not yet charged and the reason for the delay in charging is unknown."

¶ 23 This argument fails. Section 110-6(a) of the Code authorizes the revocation of pretrial release "only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State." 725 ILCS 5/110-6(a) (West Supp. 2023).The trial court found defendant was on pretrial release for case Nos. 22-CF-765 and 22-CF-766 when he allegedly committed a felony (case No. 23-CF-1952) charged by the State. The record supports this conclusion. Defendant was in custody on the residential burglary charges when he was released on recognizance to the DOC. As a condition of this release, defendant was to report a change in address and to parole services after his DOC release. The recognizance bond was revoked and a bench warrant issued for defendant's arrest on August 31, 2022. The only reasonable inference from a warrant for his arrest is defendant had been released from DOC and had not complied with the conditions of his recognizance release. Those charges remained pending. Defendant was "on pretrial release."

¶ 24 The remaining part of defendant's argument supporting this ground for reversal is similarly unconvincing. We are unaware of any reason a delay in the charge of defendant for the January 2023 offense until September 2023 prevents the revocation of his pretrial release under section 110-6(a) (*id.*). Defendant has not identified one and has, therefore, not shown error on

this ground. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 (stating the appellant bears the burden of proving trial-court error).

¶ 25    The second ground for relief checked by defendant in his notice of appeal states "[t]he State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." On the lines below the preprinted text, defendant wrote the following: "The State presented evidence that three males were present at the time the juvenile was allegedly shot; that the juvenile does not know which individual shot him. The State declined to file a petition to detain on the aggravated battery charge."

¶ 26    This preprinted ground does not apply to revocations of pretrial release under section 110-6(a) (725 ILCS 5/110-6(a) (West Supp. 2023)). The question of whether the State met this burden applies to petitions to *deny* pretrial release under section 110-6.1 (725 ILCS 5/110-6.1 (West Supp. 2023)), which was not filed here. There is no provision in section 110-6(a) requiring the State prove "the proof is evident or the presumption great that defendant committed" the charge for a felony that triggers the revocation of pretrial release. This argument fails.

¶ 27    The third ground for relief checked by defendant is the following: "The court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." Defendant wrote under this text he was just one day late for the court date he missed. He also wrote his mother testified he could reside with her and get mental health treatment.

¶ 28    In addition to the grounds and arguments defendant provided under the preprinted

text, he addressed this ground in a memorandum. Defendant contends the State did not prove by clear and convincing evidence home detention at his mother's house, combined with electronic monitoring, would not reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. Defendant emphasizes his family's willingness to support him and ensure his attendance in court. Defendant asserts there is "nothing to suggest [he] has the ability to subvert electronic monitoring[; i]f he leaves the house, cuts the band, or fails to show up for court, detention will rapidly follow."

¶ 29          Under section 110-6(a), by which the State sought revocation of defendant's pretrial release, the State must prove by clear and convincing evidence "no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(a) (West Supp. 2023). Trial court decisions regarding pretrial release are reviewed under the abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶ 30. We will find an abuse of discretion if we find a decision is arbitrary, fanciful, or unreasonable or we find the decision is one with which no reasonable person would agree. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 30          In this case, we find no abuse of discretion. The record contains ample evidence supporting the conclusion the State proved by clear and convincing evidence no condition or combination of conditions would reasonably ensure defendant's appearance for later hearings. Defendant repeatedly failed to comply with the conditions of his probation, including reporting to probation services. Defendant went months without being located or detained, while also not attending any counseling, and the only hearings he attended while on release were when he had been arrested. While released, defendant was also charged with another felony. Defendant's own

memorandum acknowledges electronic monitoring is not foolproof, suggesting the band can be cut. Given the record showing defendant had been out of custody for months while on a bench warrant, we do not believe "detention will rapidly follow" if he cuts the band and leaves the house.

¶ 31        The last ground for relief checked by defendant states he "was denied an opportunity for a fair hearing prior to the entry of the order denying or revoking pretrial release." For this ground, defendant provided only the following argument: "Defendant asserts that the Defendant was not proven to have committed an offense during the time of his current pretrial release; therefore the hearing was not fair."

¶ 32        This argument is unconvincing. Section 110-6(a) only requires a charge for a felony, not proof an offense was committed. See 725 ILCS 5/110-6(a) (West Supp. 2023). Defendant has developed no further argument challenging the fairness of the hearing and has not, therefore, met his burden of proving trial-court error on this ground. See generally *Insurance Benefit Group*, 2017 IL App (1st) 162808, ¶ 44 (stating the appellant bears the burden of proving trial-court error).

¶ 33                          III. CONCLUSION

¶ 34        We affirm the trial court's judgment.

¶ 35        Affirmed.